IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **OLATHE SENIOR APARTMENTS, LP,** et al., | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| **ACE FIRE UNDERWRITERS INSURANCE COMPANY, et al.,** | ) ) ) ) |
| Defendants. | ) ) ) |

CIVIL ACTION

No. 04-2346-CM

## MEMORANDUM AND ORDER

Plaintiffs filed this action against defendants on or about July 27, 2004. Plaintiffs allege various causes of action stemming from an intentionally set fire which destroyed a substantial portion of plaintiffs' apartment building located in Olathe, Kansas on March 11, 2004. Plaintiffs have brought fifteen claims against eleven different parties. This matter comes before the court on defendants Richard Wagner, Chris Record, and AHM Development, Inc.'s Motion to Stay Action and Compel Arbitration (Doc. 33).

**I.    Facts[1]**

At the time the Olathe Senior Apartments, LP ("Olathe LP") partnership was formed, AHM-Olathe was the general partner, and Wagner and Record were the limited partners. Plaintiff Multi-Housing Investments, LLC ("Multi-Housing") is currently the general partner of Olathe LP. AHM Development, Inc. ("AHM Development") was the general partner of AHM-Olathe, which was also a limited partnership. On

---

[1] The court has included only facts relevant to the motion currently before the court.

December 5, 2003, AHM-Olathe withdrew from Olathe LP and was replaced by Affordable Multi-Family, LLC ("AMF"). As a result of AHM-Olathe's withdrawal from Olathe LP and the substitution of AMF in that entity, AHM Development (among other related companies), Wagner, AFM, and plaintiffs executed a partnership settlement agreement on December 5, 2003. Defendant Record did not sign the settlement agreement.

Section 14(a) of the settlement agreement states that, "[a]ny controversy or claim arising out of or relating to this Agreement or breach thereof, except as provided in Section 14(j) below, shall be settled by arbitration under the procedures set forth in this Section 14." Section 14(c) of the settlement agreement provides that:

> A single arbitrator shall conduct the arbitration proceedings in accordance with provisions of the Federal Arbitration Act (9 U.S.C. Section 1 et seq.) (the "Act"). Any procedure, rule or standard specified in this Agreement will control over any conflicting procedure, rule or standard in the Act.

Section 14 provides additional specific rules governing the method by which the parties would arbitrate, including selection of the arbitrator, length and timing of the hearing, provision for a default award, discovery provisions, timing of a scheduling conference, the manner in which hearings should be conducted, and the extent of court review of the award.

Section 15(c) of the settlement agreement also contains a governing law provision that states: "This agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to conflicts of law principles."

Pursuant to a developer agreement effective December 23, 2002, AHM Development agreed with AHM-Olathe to act as the developer of the Olathe LP project. Defendants Wagner and Record withdrew

-2-

from the partnership on December 23, 2002. After their withdrawal as the limited partners, Wagner and Record continued to oversee the project as officers, directors, employees and/or agents of AHM Development, AHM-Olathe, or both. They met with construction professionals and procured the ACE Fire Underwriters Insurance Company ("ACE Fire") insurance policy that is at issue in this case. The ACE Fire policy took effect on January 24, 2003, and ran through March 24, 2004.

Construction on the project began in February 2003. Olathe LP also added the project to its own insurance policies with Crum & Forster Specialty Company ("Crum & Forster"), Essex Insurance Company ("Essex"), and Royal Indemnity Company ("Royal").

The project building was burned by an arsonist on the night of March 10 – 11, 2004. When Olathe LP made a claim for the fire damage, ACE Fire refused to pay, saying that the insurance policy had been suspended because of the failure to erect a security fence around the property as allegedly required by a policy endorsement. Plaintiffs claim that, because defendants Wagner and Record, individually and through their related AHM entities, supervised all aspects of the project, any failure to erect a fence was their failure. Additionally, plaintiffs claim that they were never made aware of the alleged fence requirement in the ACE Fire policy due partly to the malfeasance of defendants Wagner, Record, and their AHM-related entities.

In their motion to compel arbitration, defendants contend that plaintiffs' breach of contract claim states that defendants AHM-Olathe, AHM Development and Wagner allegedly breached the settlement agreement. Defendants further claim that plaintiffs have also stated claims for negligence, breach of fiduciary duty, piercing the corporate veil, promissory estoppel, false representation, concealment, and aiding and abetting breach of fiduciary duty against one or more of defendants Wagner, Record, and AHM Development. Defendants contend that these claims all relate to the same facts as are alleged in the breach

of contract claim against these same defendants; namely plaintiffs' failure to properly secure the property by a security fence and the reasons therefor. Defendants thus contend that the action should be stayed while arbitration occurs between plaintiffs and defendants Record, Wagner, and AHM Development. Defendants contend that no exceptions to the agreement to arbitrate enumerated in section 14(j) of the settlement agreement apply to plaintiffs' causes of action against these defendants.

Plaintiffs oppose defendants Record, Wagner and AHM Development's motion, and have cross-moved to stay arbitration in this case pending the outcome of the litigation. Plaintiffs contend that the California choice of law provision in the settlement agreement provides for the governance and construction of the agreement under California law, and that courts that have analyzed the interplay between the Federal Arbitration Act ("FAA") and California's arbitration law have refused to compel arbitration where there is a pending court action involving multiple claims against multiple parties and there is a possibility of conflicting rulings on common factual and legal issues. Plaintiffs further argue that they will suffer substantial prejudice from any delay in the case, and that defendant Record cannot compel arbitration because he is not a party to the settlement agreement.

Third party defendants MuniMae TEI Holdings, LLC and MuniMae Portfolio Services, LLC (collectively "MuniMae") join in plaintiffs' opposition and cross-motion to stay the arbitration. In the event the court decides to compel arbitration, MuniMae has requested that the court stay only the claims covered by the arbitration clause and permit the remainder of the claims to proceed.

## II.     Standard

The FAA, 9 U.S.C. § 1 *et seq.*, ensures that written arbitration agreements in maritime transactions and transactions involving interstate commerce are "valid, irrevocable, and enforceable." 9 U.S.C. § 2.

Federal policy favors arbitration agreements and requires that the court "rigorously enforce" them. *Shearson/Am. Exp., Inc., v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

> Section 3 of the FAA states:
>
> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

The question of whether the parties agreed to arbitrate a dispute is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986). Arbitration is a matter of contract between the parties. A party can only be made to submit to arbitration those disputes that they have agreed to submit to arbitration. *Id.* at 648; *see also Avedon Eng'g., Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997).

When a contract contains an arbitration provision, there is a presumption of arbitrability. *See AT&T*, 475 U.S. at 650. A request to arbitrate a dispute should not be denied unless the arbitration clause does not cover the dispute at issue. Any doubts should be resolved in favor of coverage under the arbitration clause. *Id.* (citing *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)); *see also Denhardt v. Trailways, Inc.*, 767 F.2d 687, 689 (10th Cir. 1985). Moreover,

when a contract contains a broad arbitration clause, with no express provision excluding a particular issue from arbitration, there is a strong presumption in favor of issues being subject to arbitration. *Id*.; *see also Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1184 (10th Cir. 2000). A party can overcome this presumption by showing the agreement to arbitrate is not part of a contract involving interstate commerce or is revocable on grounds that exist at law or equity for revocation of any contract. *See* 9 U.S.C. § 2; *see also Avedon Eng'g*., 126 F.3d at 1286. The FAA allows a district court to compel arbitration only if it finds: (1) that a valid arbitration agreement exists between the parties; and (2) that the dispute before it falls within the scope of this agreement. 9 U.S.C.A. § 1, *et seq*.

**III.    Analysis**

**A.    Enforcement of the Arbitration Provision**

Plaintiffs contend that the choice of law provision in the settlement agreement dictates that California law governs the agreement, and that California's civil procedure rules apply to the agreement. Thus, plaintiffs ask the court to apply California's arbitration law instead of federal arbitration law to determine whether plaintiffs should be compelled to arbitrate their claims against Record, Wagner, and AHM Development at this time, or whether the arbitration, pursuant to Cal. Civ. P. Code § 1281.2, should be stayed pending the outcome of this litigation.

The "Federal Arbitration Act, 9 U.S. C. §§ 1-16, which applies to all arbitration agreements "involving commerce," "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983). The FAA preempts state laws that conflict with the FAA and exempt enforcement of arbitration agreements that involve interstate commerce, *In re: Arbitration Between Ins.*

-6-

*Intermediaries, Inc. and Harbor Underwriters, Inc.*, 2002 WL 1602417, at *2, n. 1 (D. Kan. July 17, 2002), unless the parties clearly agree to exclude certain claims from the scope of their arbitration agreement or to follow state rules of arbitration, *Housh v. Dinovo Invs., Inc.*, 2003 WL 1119526, at *6 (D. Kan. Mar. 7, 2003); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 59 (1995).

The issue of whether the parties' contracts involved commerce under the FAA is governed by federal substantive law. The test is whether the transaction in fact involved interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995). In making this determination, the court looks at relevant factors in addition to the parties' diversity of citizenship, including the nature of the parties' businesses. *See id.* at 282; *Baer v. Terminix Intern. Co., Ltd. P'ship.*, 975 F. Supp. 1272, 1278 (D. Kan. 1997). Notably, none of the parties dispute that the parties' agreement involved interstate commerce or that the FAA applies to the issues before this court; rather, plaintiffs claim that the parties have chosen to apply California law to any issues subject to arbitration in conjunction with the FAA.

Plaintiffs contend that the language, "Any procedure, rule or standard specified in this Agreement will control over any conflicting procedure, rule or standard in the Act," contained in the arbitration provision, along with the choice of law provision, demonstrates that the parties intended California law to apply to the issue of whether arbitration should proceed and that the parties did not intend for arbitration to proceed if the conditions of Cal. Civ. P. Code § 1281.2(c) were met. Section 1281.2 states, in relevant part:

> On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the Court shall order petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that
> . . .

-7-

> (c) a party to the arbitration agreement is also a party to a pending Court action or a special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact.
>
> If the Court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of the pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the Court may delay its Order to arbitrate until the determination of such other issues or until such earlier time as the Court specifies.

*Id*.

Plaintiffs rely on a United States Supreme Court case, *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468 (1989), in support of their position. Plaintiffs contend that *Volt* stands for the proposition that the FAA does not confer the right to compel arbitration of a dispute at any time, but only in the manner provided for in the parties' agreement. Plaintiffs argue that the settlement agreement and the arbitration provision must be interpreted under California law, and that no conflict between the FAA and California law arises when a district court stays an arbitration pursuant to Cal. Civ. P. Code § 1281.2.

Plaintiffs contend that this case meets the requirements of § 1281.2 for a stay and that the possibility of conflicting rulings exists if all of plaintiffs' claims are not litigated in the same action. Plaintiffs further contend that all of their claims against Wagner, Record and AHM Development, except the breach of contract claim, are independent of and predate the settlement agreement and were never released by the settlement agreement. Plaintiffs contend that defendants did not bargain for arbitration of those claims.

Defendants point out that some of the arbitration provision states that the FAA will govern the arbitration, and that, while some of the specific rules and procedures stated in Section 14 of the settlement agreement are different than those contained in the FAA, the parties agreed to be governed by the rules and

-8-

procedures specifically set out in the settlement agreement with regard to those issues. Defendants contend that this demonstrates that the parties intended that the FAA govern the arbitration provision, that exceptions to the FAA were specifically set out in the arbitration section of the agreement, and that the different provisions complement the procedures set forth in the FAA. Defendants agree that *Volt* stands for the proposition that an arbitration must proceed in the manner provided for in the parties' agreement. Defendants contend that the parties' agreement states that the FAA controls the arbitration proceedings, and that the parties did not intend or contemplate that California law, specifically Cal. Civ. P. Code § 1281.2, would apply to stay the arbitration. Rather, defendants contend that the choice of law provision set out in Section 15(c) of the settlement agreement selects California contract law to govern the broader interpretation of the settlement agreement.

Defendants further contend that all of the claims against them involve the same facts regarding whether they obtained, disclosed, and properly implemented the insurance policy at issue. Defendants contend that all of plaintiffs' claims against them involve whether they notified plaintiffs of the terms of the insurance agreement and whether defendants breached the settlement agreement by allegedly not doing so. Thus, defendants contend that all of plaintiffs' claims against them are properly subject to arbitration.

The parties agree that the settlement agreement is governed by California law and that the court should look to California law and the relevant case law to determine whether the parties intended to include § 1281.2 in their arbitration agreement. The court has reviewed the *Volt* decision, as well as several other cases that have addressed whether § 1281.2 is applicable in cases where the parties did not specifically include it as part of their arbitration agreement. In *Volt*, the Supreme Court affirmed the decision of the

California Court of Appeal that the parties in that case had intended a general choice of law clause to incorporate the California rules of arbitration into their arbitration agreement. *See id.* at 474-76.

In turning to California case law to guide this court's analysis, the court finds the California Court of Appeal's decision in *Mount Diablo Medical Center v. Health Net of California*, 124 Cal. Rptr. 2d 607 (Cal. Ct. App. 2002), and the California Supreme Court's recent decision in *Cronus Investments, Inc. v. Concierge Services*, 107 P.3d 217 (Cal. 2005), instructive on the choice of law issue. In the *Mount Diablo* case, the court conducted a detailed analysis of *Volt*, *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) (a Supreme Court case that followed *Volt*), and several other cases that have addressed the interplay of the FAA and state arbitration rules, including the effect of a choice of law clause on enforcement of an arbitration provision.

The *Mount Diablo* court noted, "[i]n our view, the starting point in the interpretation of the choice-of-law clause, like any contractual provision, is with the language of the contract itself." *Id*. at 614. The *Mount Diablo* court found that the choice of law provision at issue in that case was "broad, unqualified and all encompassing." *Id*. at 615. The clause stated that "'[t]he validity, construction, interpretation and *enforcement* of this Agreement' shall be governed by California law." *Id*. (emphasis added). The *Mount Diablo* court stated:

> The explicit reference to enforcement reasonably includes such matters as whether proceedings to enforce the agreement shall occur in court or before an arbitrator. Chapter 2 (in which section 1281.2 appears) of title 9 of part III of the California Code of Civil Procedure is captioned "Enforcement of Arbitration Agreements."

*Id*. The *Mount Diablo* court then contrasted this with the choice of law provision in *Mastrobuono*, which stated that the agreement "'shall be governed by the laws of the State of New York.'" In *Mastrobuono*, the Supreme Court did not construe the choice of law provision to include New York's substantive laws.

-10-

514 U.S. at 59.  The *Mount Diablo* court also discussed another California Court of Appeal case, *Warren-Guthrie v. Health Net*, 101 Cal. Rptr. 2d 260 (Cal. Ct. App. 2000), in which the arbitration agreement stated that "'[a]ll Arbitration shall be conducted in accordance with the California Code of Civil Procedure, commencing with Section 1280.'"  *Id*. at 615 (citing *Warren-Guthrie*, 101 Cal. Rptr. 2d at 268).  In *Warren-Guthrie*, the court found that California law did not apply for "all purposes," and specifically that the parties had not agreed that the enforceability of the arbitration agreement would be determined by California law.  *Warren-Guthrie*, 101 Cal. Rptr. 2d at 268-9.

Ultimately, the *Mount Diablo* court found that the choice of law provision was broad enough to include California's state law on the issue of arbitrability and turned to "whether the particular provision of state law in question is one that reflects a hostility to the enforcement of arbitration agreements that the FAA was designed to overcome."  124 Cal. Rptr. 2d at 616.  The Supreme Court previously addressed this issue in *Volt*, holding that applying § 1281.2 would not "undermine the goals and policies of the FAA."  489 U.S. at 478.  The very purpose of the Act was to ensure that courts "enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms,'" and finding that § 1281.2 determined the order of proceedings, not the enforceability of the arbitration agreement itself.  *Id*.

Similarly, in the recent *Cronus Investments* case, the California Supreme Court found that the choice of law provision in that case, which was similar to the one in the *Mount Diablo* case, incorporated § 1281.2 into the parties' agreement.  *Id*. at 224.  In that case, the parties' agreement stated that it should be "construed and *enforced* in accordance with and governed by the laws of the State of California, without giving effect to the conflict of laws provisions thereof."  *Id*. (emphasis added).

-11-

In this case, the agreement specifies that the FAA will govern the arbitration. The settlement agreement's choice of law clause states that the agreement "shall be governed by and construed in accordance with the laws of the State of California." The choice of law provision at issue here makes no reference to "enforcement," which, from this court's analysis, appears to have been a critical factor in both the *Mount Diablo* and *Cronus Investments* courts' findings. This court finds that the choice of law provision at issue here is not nearly as "broad, unqualified and all encompassing" as in the cases the court has reviewed to make this determination. Thus, without such a broad choice of law provision, and absent a provision that specifically provides that the California arbitration rules will govern the issues subject to arbitration, the court finds that the FAA controls and plaintiffs' claims against Wagner and AHM Development are subject to arbitration without application of the stay provisions in § 1281.2. The court finds that *Volt* and the other cases examined do not require a different result. Notably, unlike the arbitration provision at issue here, the arbitration provision at issue in *Volt* (and in the other cases the court reviewed) did not specifically designate the FAA as governing the arbitration.

Moreover, when a contract contains a broad arbitration clause, such as the one at issue in this case, there is a strong presumption in favor of arbitration. *See Brown*, 220 F.3d at 1184; 9 U.S.C. § 2. Because plaintiffs have not shown the agreement to arbitrate or the designation of the rules and procedures to govern the arbitration are ambiguous, and have not overcome the presumption in favor of enforcement of the arbitration clause under the FAA, this federal court, sitting in Kansas, will enforce the arbitration clause as it is written, without application of the California procedural rules.

With regard to plaintiffs' argument that not all of thei claims against Wagner, Record and AHM Development are subject to the arbitration provision of the settlement agreement, the court finds that

plaintiffs entered into the settlement agreement with Wagner and AHM Development that incorporates a broad arbitration clause stating that the parties will resolve by arbitration *any* controversy or claim arising out of or related to the agreement, or the breach of the agreement. The agreement also does not contain any provision exempting certain types of claims from the arbitration clause. "[T]he FAA allows parties who agree to arbitrate to exclude certain claims from the scope of their arbitration agreement or agree to follow state rules of arbitration." *Housh*, 2003 WL 1119526, at *6 (citing *Volt*, 489 U.S. at 478).

While arguing that the claims, other than the breach of contract claim, against these defendants are independent of and predate the settlement agreement, plaintiffs specifically stated in their briefing on this issue that the other claims include "failure to procure appropriate insurance, failure to take steps to ensure the security of the property, and compliance with contractual obligations." Moreover, defendants contend that the remainder of plaintiffs' claims against them implicate representations and duties of both plaintiffs and defendants under Section 10(a) of the settlement agreement, and thus should be subject to arbitration. Based on the facts currently before the court, it appears that all of plaintiffs' claims against defendants Wagner, Record and AHM Development appear to arise out of the same facts and transactions that led to the settlement agreement. Moreover, plaintiffs' claims appear to be encompassed by the broad language "any controversy or claim arising out of or related to the agreement, or the breach of the agreement" as it is set forth in the settlement agreement. Accordingly, all of plaintiffs' claims against these defendants should be included as part of the arbitration pursuant to the settlement agreement.

**B.    Whether Defendant Record Can Compel Arbitration**

The final issue before the court is whether defendant Record, who did not sign the settlement agreement, can compel arbitration under the settlement agreement.

Defendant Record contends that his involvement with this litigation is exclusively as a former limited partner and an employee of AHM Development. Defendants contend that, applying California substantive law to the interpretation of the settlement agreement, defendant Record, as an agent or employee of AHM Development or AHM-Olathe, may invoke the arbitration provision, and that any claims against defendant Record in his capacity as an agent or employee of AHM Development or AHM-Olathe are subject to the settlement agreement. Defendants point to a California Supreme Court case, *Dryer v. Los Angeles Rams*, 709 P.2d 826 (1985) (en banc), which found that: "If, as the complaint alleges, the individual defendants, though not signatories, were acting as agents for [the signatory], then they are entitled to the benefit of the arbitration provisions."

*Id*. at 834. Defendants contend that plaintiffs have alleged that defendant Record's involvement with this matter arose solely from his status as a limited partner, and later as an officer, director, employee and/or agent of AHM Development, AHM-Olathe, or both. Defendants thus argue that defendant Record may invoke the arbitration clause in the settlement agreement between plaintiffs and AHM Development and AHM-Olathe.

In considering this issue, the Ninth Circuit has found that:

[t]he right to compel arbitration stems from a contractual right. That contractual right may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration. An entity that is neither a party to nor agent for nor beneficiary of the contract lacks standing to compel arbitration.

*Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993) (internal citations omitted). Plaintiffs have provided no evidence that defendant Record's position, or the position that they took in their own pleading, that defendant Record acted solely as an agent or employee of AHM Development at the time the settlement agreement was signed, is not accurate. Accordingly, the court finds that defendant Record, as an

-14-

employee and/or agent for AHM Development, is entitled to invoke the arbitration provision in the settlement agreement.

**IT IS THEREFORE ORDERED** that defendants Richard Wagner, Chris Record, and AHM Development, Inc.'s Motion to Stay Action and Compel Arbitration (Doc. 33) is granted in part and denied in part. The court finds that plaintiffs' claims against defendants Wagner, Record and AHM Development are subject to arbitration and are hereby stayed pending arbitration. The parties shall proceed to arbitration in accordance with the provisions of the arbitration clause.

**IT IS FURTHER ORDERED** that defendants' request to stay the entire action pending the arbitration of plaintiffs' claims against them is denied. Plaintiffs' claims against the remaining defendants shall proceed.

**IT IS FURTHER ORDERED** that this court shall retain jurisdiction to review, modify, or vacate any arbitration awards, should any party choose to seek such action as permitted by the FAA.

**SO ORDERED**.

Dated this 29th day of September 2005, at Kansas City, Kansas.

        **s/ Carlos Murguia**
        **CARLOS MURGUIA**
        **United States District Judge**