# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **OLATHE SENIOR APARTMENTS, LP,** et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION ) ) No. 04-2346-CM ) |
| **ACE FIRE UNDERWRITERS INSURANCE COMPANY, et al.,** | ) ) ) ) |
| Defendants. | ) ) |
| v. | ) ) |
| **MUNIMAE PORTFOLIO SERVICES, LLC, et al.,** | ) ) ) ) |
| Third Party Defendants. | ) ) |

## MEMORANDUM AND ORDER

This matter comes before the court on defendant U.S. Risk Insurance Group, Inc.'s Motion to

Dismiss for Lack of Jurisdiction (Doc. 99), plaintiffs' Cross Motion for Leave to Amend Complaint and

Substitute Party and/or Parties that are Related to Defendant U.S. Risk Insurance Group, Inc. (Doc. 114),

third party defendants MuniMae Portfolio Services, LLC, and MuniMae TEI Holdings, LLC's Cross

Motion to Add Parties (Doc. 117), defendant U.S. Risk Insurance Group, Inc.'s Motion for Leave to File

its Replies and Responses Regarding Its Motion to Dismiss and the Cross Motion (Doc. 125), and plaintiffs' Motion for Leave to Amend Complaint (Doc. 153)[1].

## I.     Background

Plaintiffs filed this action against defendants on or about July 27, 2004. Plaintiffs allege various causes of action stemming from an intentionally set fire which destroyed a substantial portion of plaintiffs' apartment building located in Olathe, Kansas on March 11, 2004.

The apartment building was covered by an insurance policy obtained from ACE Fire Underwriters Insurance Company ("ACE"), a defendant in this case. The ACE policy took effect on January 24, 2003, and ran through March 24, 2004. Construction on the apartment building began in February 2003. Plaintiff Olathe Senior Apartments, LP also added the project to its own insurance policies with Crum & Forster Specialty Company ("Crum & Forster"), Essex Insurance Company ("Essex"), and RSUI Indemnity Company (also known as Royal Indemnity Company) ("RSUI").

As a result of the March 2004 fire, plaintiffs brought claims against the four separate insurers, as well as various other defendants. Crum & Forster paid its policy limit to plaintiffs and has been dismissed from the case.

## II.    U.S. Risk's Motion to Dismiss, Plaintiffs' Cross Motion for Leave to Amend, and Third Party Defendants' Cross Motion to Add Parties

---

[1] In response to plaintiffs' Motion for Leave to Amend Complaint (Doc. 153), defendants Essex Insurance Company and RSUI Indemnity Company jointly filed a cross motion to enforce settlement agreement. The court will address defendants' cross motion in conjunction with plaintiffs' motion for leave to amend.

In its motion to dismiss, defendant U.S. Risk Insurance Group, Inc. ("U.S. Risk") claims that it is a shareholder of U.S. Risk, LLC, which is a general partner of U.S. Risk, L.P., which does business as U.S. Risk Brokers. U.S. Risk contends that U.S. Risk, L.P. is the entity that acted as the broker to procure the insurance policy from ACE, which is mainly at issue in this case. U.S. Risk contends that it is a separate and distinct entity from U.S. Risk, LLC, and was not involved in either the procurement or underwriting of the ACE policy. U.S. Risk further contends that it lacks the minimum contacts necessary for this court's exercise of jurisdiction. U.S. Risk is not a resident of Kansas.

Plaintiffs and third party defendants claim that U.S. Risk or one of its entities was directly involved in the transaction that led to the issuance of the ACE policy, and that personal jurisdiction is appropriate pursuant to Kansas' long-arm statute, Kan. Stat. Ann. § 60-308.

As an initial matter, the court grants defendant U.S. Risk's motion for leave to file its replies and responses to the motion to dismiss and plaintiffs' cross motion out of time. U.S. Risk's replies filed on May 23, 2005, (Docs. 120 and 121) are deemed timely filed.

Federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so. *Castaneda v. I.N.S.*, 23 F.3d 1576, 1580 (10th Cir. 1994). A court lacking jurisdiction must dismiss the case at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking. *Scheideman v. Shawnee County Bd. of County Comm'rs*, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)); Fed. R. Civ. P. 12(h)(3). As the party seeking to invoke federal jurisdiction, plaintiff bears the burden of establishing that such jurisdiction is proper. *Basso*, 495 F.2d at 909. When federal jurisdiction is challenged, plaintiff

bears the burden of showing why the case should not be dismissed.  *Jensen v. Johnson County Youth Baseball League*, 838 F. Supp. 1437, 1439-40 (D. Kan. 1993).

The Tenth Circuit has established the following standard to govern motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2):

> The plaintiff bears the burden of establishing personal jurisdiction over the defendant.  Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

*Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984) (citations omitted); *accord Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

In determining whether it has personal jurisdiction over a non-resident defendant, the court must apply a two-part test involving analysis under both the Kansas long-arm statute, Kan. Stat. Ann. § 60-308 (1994), and the Federal Constitution's Due Process Clause.  *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304-05 (10th Cir. 1994).

Under the long-arm statute, a non-resident submits to the jurisdiction of the State of Kansas as to any cause of action arising from the "[t]ransaction of any business" within Kansas.  Kan. Stat. Ann. § 60-308(b)(1).

> "Business" is transacted within the state when an individual is within or enters this state in person or by agent and, through dealing with another within the state, effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires.  The transaction of business exists when the nonresident purposefully does some act or consummates some transaction in the forum state.

*Volt Delta Res., Inc. v. Devine*, 241 Kan. 775, 778 (1987). The Kansas long-arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process. *Federated Rural Elec.*, 17 F.3d at 1305 (citing *Volt*, 241 Kan. at 777).

Under due process, personal jurisdiction requires "minimum contacts" between the non-resident defendant and the forum state, such that the defendant has purposefully availed itself of the privilege of conducting activities within the state. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). The defendant must reasonably be able to anticipate being haled into court in the forum state. *Id.* at 1419; *Pehr v. Sunbeam Plastics Corp.*, 874 F. Supp. 317, 320 (D. Kan. 1995). In addition, jurisdiction in the particular case must be reasonable, so as not to offend traditional notions of fair play and substantial justice. *Rambo*, 839 F.2d at 1419 n.6, *Pehr*, 874 F. Supp. at 320.

Plaintiffs and third party defendants have requested that the court deny U.S. Risk's motion to dismiss at this time and permit limited discovery regarding U.S. Risk's level of involvement in the ACE policy, its relationship to the other entities listed on the Binder, Quote and Declarations of the ACE policy, and the level of involvement of any of its related entities in the ACE policy. Plaintiffs and third party defendants contend that they have been unable to conduct discovery regarding the issues raised in U.S. Risk's motion to dismiss and specifically regarding which U.S. Risk entity was involved in the issuance of the ACE policy.

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975); *see also Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (district court permitted plaintiff to engage in limited jurisdictional discovery before

granting defendant's motion to dismiss). The court finds that, based on the existing record, there is insufficient evidence at this point to determine whether U.S. Risk or one of its entities falls within the Kansas long-arm statute. The court finds that jurisdictional discovery will more fully develop the facts relevant to whether U.S. Risk or some other entity is more properly subject to the court's jurisdiction regarding the issues in this case. The court finds that discovery shall be limited to the issues raised in U.S. Risk's motion and the responses by plaintiffs and third party defendants. Accordingly, U.S. Risk's motion to dismiss for lack of jurisdiction (Doc. 99) is denied at this time. However, U.S. Risk may re-file its motion at the conclusion of the jurisdictional discovery.

Similarly, at this time, the court denies plaintiffs' cross motion to substitute parties that are related to U.S. Risk (Doc. 114), and third party defendants' cross motion to add parties (Doc. 117). Plaintiffs and third party defendants may renew their motions to substitute and/or add parties pending the outcome of the jurisdictional discovery.

### III.    Plaintiffs' Motion for Leave to Amend Complaint and Defendants Essex and RSUI's Cross Motion to Enforce Settlement Agreement

Plaintiffs have moved to add claims against defendants Essex and RSUI, as well as business entities related to defendant U.S. Risk. With regard to plaintiffs' additional proposed claims against business entities related to defendant U.S. Risk, plaintiffs' reasons for adding those claims and parties are the same as was set forth above with regard to plaintiffs' cross motion for leave to amend its complaint in opposition to U.S. Risk's motion to dismiss. Because of the court's ruling above on that issue, the court denies this portion of plaintiffs' motion for leave to amend its complaint at this time.[2]

---

[2] As the court noted above, plaintiffs may renew their request to amend, if appropriate, upon completion of the jurisdictional discovery.

With regard to plaintiffs' additional proposed claims against Essex and RSUI, Essex and RSUI provided plaintiffs with excess coverage on the policy that has already paid its limits. Essex and RSUI have not paid plaintiffs on the excess policies. Accordingly, plaintiffs seek to add additional claims against Essex and RSUI for their alleged failure to pay pursuant to their contractual obligations and for alleged wrongful conduct in settling plaintiffs' claim after failing to reach a settlement on those claims with Essex and RSUI. Specifically, plaintiffs have moved to add claims for: 1) breach of contract; 2) bad faith breach of insurance contract/outrageous conduct/unfair claim settlement practices; 3) waiver/estoppel; and 4) fraudulent representation.[3] Under the court's scheduling order, the deadline to amend pleadings was April 29, 2005. Plaintiffs filed their motion to amend the complaint to add these claims on August 4, 2005. Plaintiffs contend that because of on-

going settlement negotiations, plaintiffs were unaware of the basis for their contractual and extra-contractual claims until late July 2005. Plaintiffs contend that the proposed claims share common questions of law and fact with plaintiffs' originally pled claims.

Essex and RSUI contend that plaintiffs seek leave to amend in alleged retaliation for defendants' refusal to waive contractual rights during settlement negotiations with plaintiffs. Essex and RSUI contend that they have not engaged in any conduct that would constitute bad faith during the settlement negotiations with plaintiffs.

In their response to plaintiffs' motion to amend, Essex and RSUI also have cross-moved to enforce an alleged settlement agreement between Essex and plaintiffs. Essex and RSUI contend that, on May 23,

---

[3] Plaintiffs refer to the bad faith, waiver/estoppel and fraudulent representations claims as the extra-contractual claims.

2005, Essex's counsel forwarded a proposed settlement agreement to plaintiffs' counsel for review. On June 8, 2005, plaintiffs' counsel forwarded proposed revisions to the settlement agreement to Essex and RSUI's counsel, and counsel discussed the proposed settlement agreement by telephone on June 30, 2005. Essex and RSUI contend that, after the June 30 telephone conference, Essex's counsel and plaintiffs' counsel exchanged a series of e-mails agreeing on material terms of a settlement agreement. Essex and RSUI contend that the terms of the final agreement were made on July 7, 2005, but that after the agreement was formed, plaintiffs' counsel sent additional correspondence to Essex confirming plaintiffs' agreement to the terms of the release, but attempting to add a new condition that was not previously part of the agreed settlement language. Essex and RSUI request that the court enforce the settlement agreement that allegedly was formed on July 7, 2005, and dismiss with prejudice all of plaintiffs' claims against Essex. Alternatively, Essex has moved the court for permission to pay the settlement funds into the court (totaling $2.5 million) until execution of the settlement agreement between plaintiffs and Essex and dismissal with prejudice of the claims against Essex.

With regard to Essex and RSUI's cross motion, plaintiffs do not object to Essex making an unconditional payment of the $2.5 million owed under the insurance contract. However, plaintiffs contend that this payment would not moot plaintiffs' claims for extra-contractual damages because the payment should have been made a long time ago. Plaintiffs contend that, although Essex offered its policy limits to plaintiffs in April 2005, Essex conditioned payment of the contractually owed benefits on plaintiffs' agreement to a waiver of all claims, including extra-contractual claims. Plaintiffs are unwilling to waive all of their claims against Essex and did not accept the policy limit payment. Plaintiffs contend that the insurance contract between the parties does not give Essex the right to insist that plaintiffs release all claims. Plaintiffs

-8-

further contend that no final terms of a settlement were ever reached, and thus the court cannot enforce the alleged settlement agreement. Finally, plaintiffs point out that Essex and RSUI's claim that they did not act in bad faith during the settlement negotiations with plaintiffs is a defense to plaintiffs' claims and should not prevent plaintiffs from amending their complaint.

Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This is a "mandate . . . to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend is a matter committed to the court's sound discretion and is not to be denied without the court giving some reason or cause on the record. *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987). Leave may be denied when the amendment would cause undue prejudice to the opposing party, when the movant has "unduly and inexplicably delayed" in requesting leave, when the movant acts on a "bad faith or dilatory motive," or when the amendment would be futile. *Foman*, 371 U.S. at 182; *State Distribs., Inc. v. Glenmore Distilleries*, 738 F.2d 405, 416 (10th Cir. 1984). In exercising its discretion, the court must be mindful that the Federal Rules of Civil Procedure are designed to facilitate decisions on the merits rather than on pleading technicalities. *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989).

Untimeliness or undue delay is cause for denying leave to amend without any showing of prejudice to the other party. *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990). Leave may be denied when the movant has known of the facts upon which the amendment is based and fails to include them in earlier complaints, *State Distribs.*, 738 F.2d at 416, or waits for some time before filing the motion to amend, *Federal Ins.*, 823 F.2d at 387.

In this case, it appears that the claims plaintiffs seek to add arose after the deadline for amending the complaint under the court's scheduling order and as a result of the parties' on-going settlement negotiations.

-9-

From the record before the court, there is no evidence that plaintiffs have unduly or inexplicably delayed in requesting leave to amend. The court further finds that the present record, despite Essex and RSUI's arguments, does not demonstrate that plaintiffs have acted in bad faith or with dilatory motive in seeking the amendment. Because Essex and RSUI are well aware of plaintiffs' claims, which are undoubtedly related to plaintiffs' other claims in this case, the court finds that Essex and RSUI will not be unduly prejudiced by the proposed amendment. Accordingly, keeping in mind the preference for making decisions on the merits, rather than on pleading technicalities, the court, in its discretion, grants plaintiffs' motion to amend its complaint to add the contractual and extra-contractual claims against Essex and RSUI.

With regard to Essex and RSUI's cross motion to enforce the settlement agreement, the court finds that it would be premature for the court to make a decision on the merits of such an issue at this point in the litigation. From the record set forth by the parties regarding the settlement negotiations, there are material issues of both fact and law with regard to whether the parties ever came to a meeting of the minds on all material terms of a settlement agreement[4], and whether Essex can condition payment of its policy limits on a release of all claims from plaintiffs. Accordingly, such issues are more properly the subject of a fully briefed summary judgment motion pursuant to Fed. R. Civ. P. 56. As a result, the court denies Essex and RSUI's cross motion to enforce the settlement agreement. However, because the parties agree that Essex owes plaintiffs the $2.5 million payment, the court finds that Essex should pay this amount into the court's registry, to be held pending resolution of the litigation, or the parties' settlement of the claims against Essex, whichever occurs first.

---

[4] The record of the settlement negotiations between the parties involves a series of correspondence between legal counsel, both by e-mail and through the mail. No signed settlement agreement exists.

**IT IS THEREFORE ORDERED** that defendant U.S. Risk Insurance Group, Inc.'s Motion for Leave to File its Replies and Responses Regarding Its Motion to Dismiss and the Cross Motion (Doc. 125) is granted, and defendant U.S. Risk Insurance Group, Inc.'s Motion to Dismiss for Lack of Jurisdiction (Doc. 99) is denied without prejudice.

**IT IS FURTHER ORDERED** that plaintiffs' Cross Motion for Leave to Amend Complaint and Substitute Party and/or Parties that are Related to Defendant U.S. Risk Insurance Group, Inc. (Doc. 114), and third-party defendants MuniMae Portfolio Services, LLC, and MuniMae TEI Holdings, LLC's Cross Motion to Add Parties (Doc. 117) are denied without prejudice.

**IT IS FURTHER ORDERED** that plaintiffs' Motion for Leave to Amend Complaint (Doc. 153) is granted in part and denied in part as set forth above, and defendants Essex and RSUI's cross motion to enforce the settlement agreement (which was embodied in Essex and RSUI's response to plaintiffs' motion for leave to amend) is denied.

**IT IS FURTHER ORDERED** that defendant Essex pay into the court's registry the $2.5 million payment that is owed plaintiffs, pending final resolution of the litigation or the parties' settlement of the claims against Essex.

**SO ORDERED**.

Dated this 20th day of October 2005, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**